**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 17-cv-01456-CMA-KLM

MICHAEL BETHEL,

      Plaintiff,

v.

BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

      This matter is before the Court on Plaintiff Michael Bethel's Motion for Partial Summary Judgment (Doc. # 55) and Defendant Berkshire Hathaway Homestate Insurance Company's Motion for Summary Judgment (Doc. # 63). Both motions have been fully briefed. (Doc. ## 64, 81, 82, 89.) Having thoroughly reviewed the underlying briefing, pertinent record, and applicable law, the Court grants Defendant's Motion and denies Plaintiff's Motion for the following reasons.

## I.    <u>BACKGROUND</u>

      This property insurance dispute arises from a fire that occurred at 701 Sycamore Ave. in Rocky Ford, Colorado on December 18, 2016. (Doc. # 55 at 1.) The property ("Covered Property") was insured by Defendant, and the policy ("Policy") was in effect at

the time of the fire. Defendant investigated the incident and determined that the fire was accidental in nature and that the Covered Property suffered a total loss which was covered by the Policy.

Plaintiff had purchased the Covered Property for $100,000 in May 2016 from a friend who had loaned the money to him for the transaction. (Doc. # 63 at 1; Doc. # 65 at 3–4.) The Policy was an "Actual Cash Value" policy with a limit of $407,000. After the fire, Defendant retained a certified real estate appraiser who determined that the market value of the Covered Property was $109,000 at the time of the December 18, 2016 fire. (Doc. # 63 at 1–5.)

Based upon the appraisal, Defendant determined that the value of the of the Covered Property was $109,000 at the time of the loss. By a letter dated April 3, 2017, Defendant issued payment to Plaintiff for $79,000, which represented the value of the Covered Property less the $30,000 advance Defendant had paid Plaintiff on March 1, 2017, while the appraisal process was being completed. (*Id.*)

The April 3 letter also advised Plaintiff of the terms of the debris removal coverage available under the Policy, including the requirement that such expenses be reported to Defendant within 180 days of the date of loss. The letter noted that Plaintiff had previously submitted a bid he had received for debris removal but no actual invoices. Defendant requested that Plaintiff send "the invoices, evidence of payment, and any other applicable documentation for the debris removal expense associated with the Claim." (Doc. # 63-1 at 186.) Thereafter, Plaintiff did not submit evidence of

payment for any debris removal expenses, and as of June 13, 2018, Plaintiff had not begun debris removal work at the Covered Property.

Plaintiff subsequently initiated the instant action, claiming that he is entitled to the policy limit of $407,000 rather than the Covered Property's market value of $109,000.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 118 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential

element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III.   ANALYSIS

Insurance policies are interpreted as a matter of law by the Court. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002); *Smith v. State Farm Mut. Auto. Ins. Co.*, 2017 COA 6, ¶ 6. Additionally, under Colorado law, courts "construe insurance policies according to principles of contract interpretation." *MarkWest Energy Partners, L.P. v. Zurich Am. Ins. Co.*, 2016 COA 110, ¶ 13 (citing *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 214 P.3d 489, 492 (Colo. App. 2008), *aff'd*, 246 P.3d 651 (Colo. 2011)). Therefore, courts enforce the plain language of the policy unless it is ambiguous. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). Moreover, in the absence of

ambiguity, the intent of the parties is to be determined by the language of the policies themselves, not by extrinsic evidence. *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 750 (Colo. 1978); *DTC Energy Grp.*, No. 17-cv-01718-PAB-KLM, 2018 WL 305733, at *3 (D. Colo. Jan. 4, 2018).

Plaintiff raises three claims for relief: breach of contract; unreasonable delay or denial of an insurance claim; and common law bad faith. (Doc. # 1 at 3–4.) The Court will consider each claim in turn.

## A.    WHETHER DEFENDANT BREACHED ITS POLICY OBLIGATIONS

In order to prevail on a breach of contract claim, a plaintiff must prove that the parties entered into a contract; the defendant failed to perform its obligations under the contract; and the plaintiff substantially complied with its obligations. *Children's Hosp. Colo. v. Digisonics, Inc.*, No. 16-cv-00011-RBJ, 2017 WL 2778521, at *3, (D. Colo. June 27, 2017) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)). Plaintiff argues that Defendant breached its contractual obligations by "failing to perform its obligations under the contract, including failing to pay [Plaintiff] the actual cash value of his [p]roperty, and failing to pay him other benefits owed to him under the Policy, including but not limited to debris removal benefits." (Doc. # 1 at 3.) Defendant, by contrast, argues Plaintiff cannot prove a breach of contract claim with respect to (1) the building coverage or (2) the debris removal coverage. (Doc. # 63 at 6, 14.)

### 1.    Building Coverage

The Policy contains a Building and Personal Property Coverage Form which indicates Defendant "will pay for direct physical loss of or damage to Covered Property

5

. . . caused by or resulting from any Covered Cause of Loss." (Doc. # 63-1 at 26.) The coverage is subject to various conditions. (*Id.* at 33.) Specifically, the Policy indicates:

> a. In the event of loss or damage covered by this Coverage Form, *at our option*, we will either:
> (1) Pay the value of lost or damaged property;
> (2) Pay the cost of repairing or replacing the lost or damaged property . . . ;
> (3) Take all or any part of the property at an agreed or appraised value; or
> (4) Repair, rebuild or replace the property with other property of like kind and quality . . . .
> d. *We will not pay you more than your financial interest in the Covered Property.*

(*Id.* at 35) (emphasis added). Thus, the plain language of the Policy provides Defendant with the option to, *inter alia*, pay insureds either the value of the property or the cost of repairing or replacing the property, subject to the limit of the insured's financial interest in the property. With respect to the method of valuation, the Policy indicates that Defendant will "determine the value of Covered Property in the event of loss or damage . . . [a]t actual cash value as of the time of loss or damage . . . ." (*Id.* at 36.)

The Policy does not explicitly define the term "actual cash value" ("ACV"). However, Plaintiff argues that the meaning of the term ACV is included in Defendant's Summary of Coverage form. (Doc. # 55 at 10.) The Court disagrees.

### *a.    The Summary's definition is not controlling*

The Summary of Coverage form indicates that "Actual Cash Value is the cost of repairing or replacing damaged or destroyed property with property of the same kind and quality less depreciation, **subject to the limits shown in your declaration page and policy.**" (Doc. # 63-1 at 7.) The form further indicates in bold, capital letters:

> This document is a summary of your commercial property coverage. The information in this document does not replace any policy provision. Please

read your policy for details! *In the event of a conflict between the policy and this disclosure form, your policy provisions shall prevail.*

(*Id.*) (emphasis added).

In *McFarland v. State Farm Fire and Casualty Company*, No. 17-cv-00291-MSK-STV, 2017 WL 3034623 (D. Colo. July 18, 2017), Chief Judge Marcia Krieger analyzed an identical issue. There, an insured contended that a "Summary of Coverage" form defined the term "Actual Cash Value." *Id.* at n.1. That form indicated that ACV was "the cost of repairing or replacing damaged or destroyed property with property of the same kind and quality less depreciation." *Id.* (citation omitted). The Chief Judge rejected the insured's argument for the following reasons:

> First, the primary rule of contract interpretation is to begin with the terms of the contract—here, the Policy. Second the summary expressly states that it cannot be considered in interpreting or augmenting the terms of the Policy. It states that it "does not replace any policy provision", that "coverage is subject to the terms, conditions, special limits, and exclusions of the policy," and "in the event of a conflict between the policy and this summary disclosure form, your policy provisions shall prevail."

*Id.* (citation omitted).

Because the Summary of Coverage form at issue in the instant case is effectively the same as the one which was rejected in *McFarland*, this Court finds that Judge Krieger's reasoning applies with equal force. Therefore, the definition of ACV in the Summary of Coverage form is not controlling. Moreover, Plaintiff's arguments that the Summary does not conflict with the terms of the Policy are unavailing.

>   *b.   Application of the Summary's definition conflicts with the Policy*

The Summary of Coverage form indicates that "[i]n the event of a conflict between the policy and this disclosure form, your policy provisions shall prevail."

(Doc. # 63-1 at 7.) Plaintiff argues that there are no provisions in that Policy that conflict

with the Summary's definition of ACV. (Doc. # 55 at 13.) The Court rejects Plaintiff's

argument because the definition in the Summary conflicts with two provisions of the

Policy's Building and Personal Property Coverage Form.

### i.    *"Value" provision*

Application of the Summary's definition of ACV would render part of the Loss

Payment provision of the Building and Personal Property Coverage Form redundant.

According to the Loss Payment provision, Defendant has the option to, *inter alia*, pay

insureds "the value of lost or damaged property." (Doc. # 63-1 at 35.) The same

provision indicates that Defendant can alternatively pay insureds "the *cost of repairing*

*or replacing* the lost or damaged property." (*Id.*) (emphasis added).

"Value" is determined "[a]t actual cash value at the time of loss or damage . . . ."

(*Id.* at 37.) The Summary's definition of ACV is the "*cost of repairing or replacing*

damaged or destroyed property with property of the same kind and quality less

depreciation . . . ." (Doc. # 63-1 at 7) (emphasis added). Therefore, application of the

Summary's definition equates the "value" of lost property with the "cost of repairing or

replacing" the property notwithstanding the fact that the Loss Payment provision clearly

distinguishes those concepts. Thus, the Summary conflicts with the Loss Payment

provision because it creates an unintended redundancy.

### ii.    Financial interest provision

The Summary's definition of ACV conflicts with the Policy provision that

Defendant will not pay an insured "*more than your financial interest in the Covered*

*Property.*" (*Id.* at 35) (emphasis added). Black's Law Dictionary defines "financial interest" as "[a]n interest involving money or its equivalent; esp., an interest in the nature of an investment. — Also termed *pecuniary interest.*" INTEREST, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also OWNERS' EQUITY*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "owner's equity" as "the capital contributed by the owners plus any retained earnings."). It is undisputed that Plaintiff purchased the Property on May 6, 2016, for $100,000. (Doc. # 63 at 2.) A certified real estate appraiser determined that the market value of the Covered Property was $109,000 as of December 17, 2016 (which represented the overall property value minus the lot value of $6,000). (Doc 63-1 at 188–192.) Therefore, the Summary conflicts with the Financial Interest provision in the Policy to the extent that its definition of ACV would require Defendant to pay more than $109,000 on Plaintiff's claim.

However, Plaintiff argues that Defendant waived any defense to coverage based on the Financial Interest provision because Defendant did not raise that defense in its letter informing Plaintiff he would receive a payment based on the real estate appraisal. (Doc. # 55 at 16.) Under Colorado law, it is "well established" that "the doctrines of implied waiver and estoppel, based upon the conduct or action of the insurer, are not available bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Crazy Willy's Inc. v. Valley Forge Ins. Co.*, No. 13-cv-03154-CMA-KMT, 2015 WL 898878 (D. Colo. Feb. 27, 2015) (quoting *McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 526 (Colo. App. 2004)) (rejecting as legally erroneous plaintiff's argument that "[u]nder Colorado law, when an insurer denies

coverage, it waives the right to later add additional defenses to coverage."). It is

uncontested that Defendant's defenses to Plaintiff's coverage claim in the instant case

depend entirely on limitations "which define the parameters of the coverage provided by

the insurance policy" and are thus "not subject to waiver." *Gallegos v. Safeco Ins. Co. of

Am.*, 646 F. App'x 689, 695 (10th Cir. 2016) (citing *Hartford Live Stock Ins. Co. v.

Phillips*, 372 P.2d 740, 742 (Colo. 1962)).

In sum, the definition of ACV in the Summary of Coverage form is not controlling.

The plain language of the Summary indicates that its contents cannot be considered in

interpreting or augmenting the terms of the Policy. Additionally, the definition conflicts

with multiple Policy provisions and the Summary indicates that in the event of such

conflicts, the terms of the Policy prevail.

c.    *Defendant's Market Value Assessment*

Because the Summary's definition of ACV is inapplicable, the term is undefined

by the Policy. "When faced with terms in an insurance policy that are not defined . . .

such terms [must] be given their plain, ordinary meaning and interpreted according to

the understanding of the average purchaser of insurance." *Ace Am. Ins. Co. v. Dish

Network, LLC*, 883 F.3d 881, 887 (10th Cir. 2018) (quoting *Compass Ins. Co. v. City of

Littleton*, 984 P.2d 606, 617 (Colo. 1999)). Moreover, "[w]hen determining the plain and

ordinary meaning of words, definitions in a recognized dictionary may be considered."

*Id.* (quoting *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1091 (Colo.

1991)); *Renfandt v. New York Life Ins. Co.*, 2018 CO 49, ¶ 18 (same). Courts may also

consider definitions accepted by other courts, the industry, and authoritative secondary

10

sources. *See Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 507 (Colo. 2004);

*Travelers Indem. Co. v. Howard Elec. Co.*, 879 P.2d 431, 434 (Colo. App. 1994) (citing

*Heller v. Fire Ins. Exch.*, 800 P.2d 1006 (Colo. 1990)).

An insurance policy must be enforced as written, unless the policy contains an

ambiguity. *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, No. 17-CV-01595-

CMA-MJW, 2018 WL 619753, at *2 (D. Colo. Jan. 30, 2018) (citing *Cary v. United of

Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005)). To ascertain whether a provision

is ambiguous, the Court construes it "in harmony with the plain, popular, and generally

accepted meaning of the words employed." *McFarland*, 2017 WL 3034623, at *2

(quoting *Wota v. Blue Cross & Blue Shield*, 831 P.2d 1307, 1309 (Colo. 1992)). Policy

provisions "should be read to avoid ambiguities if possible, and the language should not

be tortured to create ambiguities . . . . Mere disagreement between the parties about the

meaning of a provision in a policy does not create an ambiguity." *Wota*, 831 P.2d at

1309 (citations omitted).

Where, as here, the term ACV is not specifically defined by an insurance policy,

the term is not ambiguous because it is possible "to determine what the policy means by

'actual cash value' particularly considering its 'popular' and 'generally accepted

meaning.'" *McFarland*, 2017 WL 3034623, at *2 (quoting *Wota*, 831 P.2d at 1309). It is

"clear that 'actual cash value' stands for a specific concept in insurance law where the

insured is paid only what the asset is worth at the time of loss, a theory of coverage

distinct from 'replacement cost,' where the insured receives the amount to replace the

asset." *Id.* (citing *Graves v. Am. Family Ins. Co.*, 686 F. App'x 536, 538–39 (10th Cir.

2017)). Additionally, courts have held that when an insurance policy does not have a specific formula on which to base a determination of the value of property according to an ACV provision,

> there is a priority of rules to determine actual cash value as follows, (1) where market value is easily determined, actual cash value is market value, (2) if there is no market value, replacement or reproduction cost may be used, (3) failing the other two tests, any evidence tending to formulate a correct estimate of value may be used.

12 COUCH ON INS. 3d § 175:24 (2018) (citing *Sullivan v. Liberty Mut. Fire Ins. Co.*, 384 A.3d 384 (Conn. 1978); *Olson v. Le Mars Mut. Ins. Co. of Iowa*, 696 N.W.2d. 453 (Neb. 2005)).

In the instant case, Defendant's evaluation of Plaintiff's Covered Property according to its market value did not constitute a breach of Defendant's contractual obligations. Defendant has presented evidence that it was possible to determine the market value of the Covered Property. (Doc. # 63-1 at 188–210.) Additionally, Defendant has presented evidence that calculating market value was superior to other methods of evaluation because, under the circumstances of the loss, it was "almost impossible to calculate the amount of depreciation . . . ." (*Id.* at 183.) Therefore, evaluating the Covered Property's market value was consistent with Defendant's obligation to determine the property's ACV. Accordingly, Defendant has met its burden of demonstrating an absence of a genuine dispute of material fact with respect to

whether Defendant breached its contractual duties regarding the building coverage.[1]

*Adler*, 144 F.3d at 671 (citing *Celotex*, 477 U.S. at 325).

2. <u>Debris Removal Coverage</u>

The Policy contains the following provision with respect to debris removal:

> . . . we will pay your *expense* to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The *expenses* will be paid *only if* they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(Doc. # 63-1 at 28) (emphasis added).

It is undisputed that Plaintiff did not remove any debris from the Covered Property within 180 days following the loss. However, Plaintiff argues that he complied with his obligations under the Policy because he submitted a bid to remove the debris within 180 days of the date of the loss. (Doc. # 81 at 22.)

The plain language of the debris provision applies to "expenses." (Doc. # 63-1 at 28.) The term "expense" is not explicitly defined in the policy. Black's Law Dictionary defines "expense" as "[a]n expenditure of money, time, labor or resources to accomplish a result . . . ." *EXPENSE*, BLACK'S LAW DICTIONARY (10th ed. 2014). The Oxford English Dictionary defines "expense" as a "[b]urden of expenditure; the pecuniary charge, cost

---

[1] Plaintiff's argument that the meaning of ACV can be determined from the function and operation of the Policy provisions (Doc. # 81 at 12–16) does not met his burden of showing that there is a genuine issue of material fact for trial. Plaintiff cites no support for his argument and the argument is based on logic that is tenuous at best. For instance, Plaintiff asserts that "[t]he initial reference to 'replacement cost' in Section 3 a . . . distinguishes it from actual cash value by noting that 'replacement cost' does not have a 'deduction for depreciation.' This definition necessarily includes the corollary that ACV does have a deduction for depreciation." (*Id.* at 13.) However, "'[a]ctual cash value' within fire policies limiting recovery to the actual cash value of the property at the time of loss . . . is not synonymous with replacement cost, or even replacement cost less depreciation." 12 COUCH ON INS. 3d § 175:26 (2018). Therefore, the assumption underlying Plaintiff's argument is erroneous.

or sacrifice involved in any course of action, mode of living, etc., or the requisite for the attainment of any object." *Expense, n.*, OXFORD ENGLISH DICTIONARY, http://www.oed.com. Finally, Merriam-Webster defines "expense" as "something expended to secure a benefit or bring about a result . . . [a] financial burden or outlay." *Expense*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/expense.

By contrast, Black's Law Dictionary defines a "bid" as "[a] submitted price at which one will perform work or supply goods." *BID*, BLACK'S LAW DICTIONARY (10th ed. 2014). The Oxford English Dictionary defines a "bid" as "[t]he offer of a price." *Bid, n.*, OXFORD ENGLISH DICTIONARY, http://www.oed.com. Finally, Merriam-Webster defines "bid" as "a statement of what one will give or take for something." *Bid*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/bid.

Therefore, because Plaintiff did not submit any evidence of an expenditure of money or financial burden he incurred with respect to removing the debris, he did not perform his contractual obligations. Plaintiff's submission of the price at which a third party was willing to charge to remove the debris clearly does not constitute an "expense." Thus, Defendant has met its burden of demonstrating Plaintiff's lack of evidence on an essential element of Plaintiff's claim for breach of contract, namely Plaintiff cannot show that he performed his duties under the Policy.[2] *Adler*, 144 F.3d at 671 (citing *Celotex*, 477 U.S. at 325).

---

[2] Plaintiff's argument that "[t]he policy language does not differentiate between an expense that has been paid, and one that has been accrued" (Doc. # 81 at 22) is without merit. If the Court were to construe the provision as Plaintiff suggests, the clear language of the Policy would be "tortured to create ambiguities." *Wota*, 831 P.2d at 1309 (citations omitted).

**B.      WHETHER DEFENDANT UNREASONABLY DELAYED PAYMENT OR UNREASONABLY DENIED PLAINTIFF'S CLAIM**

Pursuant to C.R.S. § 10-3-1115(1)(a), "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." To prevail on a claim under § 10-3-1115, a plaintiff must show that (1) benefits were owed under the policy; and (2) the defendant unreasonably delayed or denied payment of plaintiff's claim. *See* § 10–3–1115; *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018); *Edge Construction, LLC v. Owners Ins. Co.*, No. 14-cv-00912-MJW, 2015 WL 4035567, at *6 (D. Colo. June 29, 2015).

An insurer's delay or denial of payment is unreasonable if the insurer lacked a "reasonable basis for that action." § 10–3–1115(2). The issue of unreasonableness is usually a question of fact, but "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (citing *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008)). For example, where fewer than 50 days have elapsed between an insured's claim and the insurer's offer of payment, courts have held that no reasonable jury could find that the insurer unreasonably delayed in investigating the claim. *See id.*

Statutory bad faith claims are evaluated objectively based on industry standards. *Id.*; *Stoole v. Metro. Prop. & Cas. Ins. Co.*, No. 17-CV-00613-NYW, 2018 WL 4923939, at *2 (D. Colo. Oct. 10, 2018). "These standards may be established through expert opinions or state law." *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th

Cir. 2016). For instance, the Unfair Claims Settlement Practices Act ("UCSPA") may be valid, though not conclusive, evidence of industry standards. *See Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1227 (10th Cir. 2016) (citing C.R.S. §§ 10-3-1104 (1)(h)(I–XIV)).

The UCSPA enumerates various prohibited claim settlement practices, including "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information . . . ." C.R.S. § 10–3–1104 (1)(h)(IV); *see Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1104 (D. Colo. 2013).

Plaintiff argues that Defendant "violated C.R.S. § 10-3-1115 by delaying or denying payment of covered benefits owed to Plaintiff under the terms of the Policy without a reasonable basis . . . ." (Doc. # 1 at 4.) Specifically, Plaintiff asserts that Defendant "refuse[d] to follow the Policy valuation method" by employing a market value approach and Defendant failed to conduct a reasonable investigation of Plaintiff's "communications concerning the definition of [ACV]." (Doc. # 81 at 23.) Plaintiff also contends that Defendant "ignored communications from the insured, and failed to investigate information on the claim presented by the insured." (*Id.* at 26–27.) Finally, Plaintiff argues that Defendant "acted in bad faith and in violation of industry standards, by failing to give full and accurate information to [the appraiser] in connection with the appraisal it ordered." (*Id.* at 27.)

However, Plaintiff's assertions fail to create a genuine dispute of material fact. It is undisputed that Defendant owed Plaintiff benefits under the Policy. *See* (Doc. # 63 at 4) (noting that Defendant investigated the circumstances of Plaintiff's claim and

16

determined that the fire was a covered loss). Nevertheless, even when considered in the light most favorable to Plaintiff, his factual assertions do not show that Defendant unreasonably delayed or denied payment of Plaintiff's claim for benefits.

Plaintiff's argument that Defendant's claim investigation was faulty because Defendant employed a market value approach to determine the ACV of the Covered Property presupposes the truth of an assumption that the Court has rejected. Contrary to Plaintiff's argument, evaluating the Covered Property's market value was consistent with Defendant's obligation to determine the property's ACV based on the plain language of the Policy. *See supra* Section III(A)(1)(c). Moreover, Defendant submitted unconverted evidence that calculating market value was superior to other methods of evaluation because, under the circumstances of the loss, it was "almost impossible to calculate the amount of depreciation . . . ." (Doc. # 63-1 at 183.) Therefore, Defendant's alleged failure to determine the ACV based on the cost of repair or replacement less depreciation does not show that Defendant failed to conduct an adequate investigation of Plaintiff's claim.

Similarly, Plaintiff's argument that Defendant's investigation was deficient because Defendant allegedly ignored communications from Plaintiff with respect to the Covered Property's value is inadequate. The cost of repair or replacement definition of ACV in the Summary of Coverage form is not controlling, which is to say that under the terms of the Policy, Defendant was not obligated to evaluate the Covered Property based on that definition. *See supra* Section III(A)(1)(a). Therefore, Plaintiff's allegation

that Defendant failed to consider information about the cost of repair or replacement of the Covered Property does not show that Defendant's investigation was unreasonable.

Additionally, Plaintiff's argument regarding Defendant's appraisal of the Covered Property is unavailing. Plaintiff criticizes the method by which Defendant and the real estate appraiser it retained determined the square footage of the Covered Property. (Doc. # 81 at 27.) Specifically, Plaintiff alleges that Defendant should have provided the appraiser with additional information that may have had an impact on the appraiser's analysis. (*Id.*) Plaintiff claims that Defendant's alleged failure constitutes a "violation of industry standards." (*Id.*) However, Plaintiff does not cite any support for that proposition, and Plaintiff does not even specify what standard Defendant presumably violated. Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones*, 366 F.3d 869, 875 (10th Cir. 2004). Therefore, Plaintiff has not shown that Defendant's conduct violated the UCSPA.

Even if Plaintiff could show that Defendant's conduct violated industry standards, Plaintiff's statutory bad faith claim would still fail. The record establishes that there has been no denial of Plaintiff's insurance claim. Therefore, in order to survive summary judgement, Plaintiff would need to show that payment on his claim was delayed unreasonably. *See* § 10–3–1115; *TBL Collectibles*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018). "Logically, to establish that there was a delay in payment of [an insured's] claim would require a comparison between the time taken by [the insurer] to pay it, and some objective standard as to timeliness for paying similar claims." *Turner v. State*

*Farm Mut. Auto. Ins. Co.*, No. 13-cv-01843-MSK-BNB, 2015 WL 1297844, at *3 (D.

Colo. March 19, 2015). However, the gravamen of Plaintiff's argument with respect to

statutory bad faith relates only to whether Defendant investigated his claim

unreasonably. In fact, Plaintiff's Response (Doc. # 81) to Defendant's Motion for

Summary Judgment does not even *address* the issue of whether the payment of

Plaintiff's claim was delayed at all.[3]

In sum, Defendant—as the party that does not bear the ultimate burden of

persuasion at trial—met its burden at summary judgment by pointing the Court to a lack

of evidence for the other party on an essential element of that party's claim by indicating

that the evidence in the record fails to support Plaintiff's contention that payment was

delayed. *Adler*, 144 F.3d at 671 (citing *Celotex*, 477 U.S. at 325). Plaintiff, by contrast,

failed to meet its burden because Plaintiff did not "set forth specific facts that would be

admissible in evidence from which a rational trier of fact could find for the nonmoving

party" on the issue of delayed payment. *Id.* at 671.

---

[3] The Court notes that apart from a cursory paragraph in Plaintiff's Motion for Partial Summary Judgement, the only *substantive* discussion of the timeliness of Defendant's payment appears in Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment. (Doc. # 55 at 20; Doc. # 82 at 5–6.) Plaintiff's argument in his Partial Motion for Summary Judgment depends on the erroneous premise that Defendant's "[u]se of a real estate appraisal was unreasonable and in violation of the parties' contract." (Doc. # 55 at 21.) As for the arguments raised in Plaintiff's Reply, "Reply briefs *reply* to arguments made in the response brief—they do not provide the moving party a new opportunity to present yet another issue for the court's consideration," which is especially true where, as here, the issue of timeliness would have been properly raised in response to an entirely different motion, namely Defendant's Motion for Summary Judgment. *Gates Corp. v. Dorman Prods., Inc.*, 09-cv-02058-CMA-KLM, 2009 WL 4675099, at *2 (D. Colo. Dec. 7, 2009) (quoting *Novosteel Sa v. US*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

**C.      WHETHER DEFENDANT ACTED IN BAD FAITH**

Pursuant to C.R.S. § 10-3-1113(1) an "insurer owes its insured the duty of good faith and fair dealing, which duty is breached if the insurer delays or denies payment without a reasonable basis . . . ." Plaintiff argues Defendant "breached its duty of good faith and fair dealing, owed to . . . Plaintiff as its insured, in connection with its handling of Plaintiff's [c]laim, in violation of C.R.S. § 10-3-1113." (Doc. # 1 at 4.) Plaintiff also asserts that Defendant violated the common law duty of good faith and fair dealing. (Doc. # 81 at 27.) To establish the common law "tort of bad faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness." *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1226 (Colo. App. 2000) (citing *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545 (Colo. 1997)). Defendant, by contrast, argues that Plaintiff cannot prove Defendant acted unreasonably with respect to Plaintiff's claims under the Policy. (Doc. # 63 at 20.)

The Court has found that there is no genuine issue of material fact with regard to whether Defendant delayed payment of Plaintiff's claim. *See supra* Section III(B).[4] Plaintiff alternatively argues that Defendant acted in bad faith by "switching valuation methods and charging [Plaintiff] for illusory coverage." (Doc. # 81 at 28.) This argument is without merit. As with Plaintiff's statutory bad faith claim, Plaintiff's argument appears

---

[4] In Plaintiff's argument related to common law bad faith, Plaintiff indicates that he "incorporates herein by reference Sections B 1 to B 4 above," which are Plaintiff's arguments related to statutory bad faith. (Doc. # 81 at 28.) To the extent Plaintiff intends to reiterate the same arguments that the Court has already rejected, the Court rejects them again for the same reasons set forth in Section III(B), *supra*.

to presuppose that the definition of ACV in the Summary of Coverage form is controlling. The Court has rejected that proposition. *See supra* Section III(A)(1)(a).

Moreover, the Policy indicates that in the event of a covered loss, "*at our option*, we will either: (1) Pay the value of lost or damaged property; [or] (2) Pay the cost of repairing or replacing the lost or damaged property . . . ." (Doc. # 63-1 at 35) (emphasis added). Thus, Defendant had the option of paying claims on a repair/replacement basis or on the basis of the value of the property. This Court has determined that analyzing the "value" of property according to its market value is consistent with the plain language of the Policy. *See supra* Section III(A)(1)(c). Therefore, Plaintiff's allegation that Defendant had previously endorsed a repair/replacement evaluation method before exercising its option to analyze the market value of the Covered Property does not show that Defendant acted unreasonably. Accordingly, Plaintiff has failed to meet its burden of establishing a genuine dispute of material fact with respect to whether Defendant violated its obligations under the Policy in bad faith.

## IV. CONCLUSION

Accordingly, the Court ORDERS that Defendant Berkshire Hathaway Homestate Insurance Company's Motion for Summary Judgment (Doc. # 63) is GRANTED. It is

FURTHER ORDERED that Plaintiff Michael Bethel's Motion for Partial Summary Judgment (Doc. # 55) is DENIED. It is

FURTHER ORDERED that Defendant's Motion to Exclude Testimony of Plaintiff's Expert Garth Allen Pursuant to Fed. R. Evid. 702 (Doc. # 95) and Defendant's

Motion to Exclude Evidence of Untimely and Undisclosed Expert Opinions at Trial (Doc. # 96) are DENIED as moot. It is

FURTHER ORDERED that the Final Trial Preparation Conference set for February 20, 2019, and the five-day Jury Trial set to begin on March 4, 2019, are hereby VACATED.

The Clerk of the Court respectfully is directed to enter judgment in Defendant's favor and terminate this action.

DATED: January 28, 2019                    BY THE COURT:


_____
CHRISTINE M. ARGUELLO
United States District Judge