IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-01456-CMA-KLM

MICHAEL BETHEL,

    Plaintiff,

v.

BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY**

---

This matter is before the Court on Plaintiff Michael Bethel's Motion to Exclude or Limit Expert Testimony by Jon F. Sands, Esq. Pursuant to Federal Rule of Evidence 702 (the "Motion"). (Doc. # 161.) For the following reasons, the Court grants in part and denies in part the Motion.[1]

    I.    **BACKGROUND**

This is a property insurance dispute. Plaintiff Michael Bethel owned an apartment building in Rocky Ford, Colorado ("the Property"). The Property was insured by Defendant Berkshire Hathaway Homestate Insurance Company ("Berkshire"). In 2016, the Property was destroyed in a fire, and Bethel filed an insurance claim under his

---

[1] Neither party requested oral argument on the Motion, and the Court does not find that a hearing is necessary under the circumstances.

Berkshire policy (the "Policy"). Berkshire paid Bethel the full market value of the Property at the time of the fire: $109,000.

Bethel sued, claiming that he had been underpaid. Both parties moved for summary judgment. The parties agree that, under the insurance policy, Berkshire was obliged to pay Bethel the "actual cash value" ("ACV") of the Property. They disagree, however, as to the meaning of "actual cash value." Berkshire argues that the ACV of the building should be calculated based on its market value as determined by a real estate appraisal. Bethel argues that ACV is calculated based on replacement cost minus depreciation. Accordingly, Bethel argues he is entitled to $407,000 in insurance benefits based on the Policy.

In its first summary judgment order, the Court agreed with Berkshire. *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 17-cv-01456-CMA-KLM, 2019 WL 339782, at *1 (D. Colo. Jan. 28, 2019), *aff'd in part, rev'd in part and remanded,* 822 F. App'x 835 (10th Cir. 2020). However, the Court of Appeals reversed in part. *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 822 F. App'x 835, 840 (10th Cir. 2020). Though the Court of Appeals agreed that "actual cash value" is distinct from "replacement cost," it found that, under this particular Policy, the term "actual cash value" *might* mean "replacement cost <u>without depreciation</u>." *Id.* at 840. Therefore, it concluded, "the meaning of 'actual cash value' is ambiguous," as it is used in this particular Policy. *Id.* at 841. The Court of Appeals remanded the case to this Court "for full consideration of extrinsic evidence bearing on the parties' intended meaning of 'actual cash value.'" *Id.*

On remand, and upon consideration of the renewed motions for summary judgment briefing, the Court determined that there are genuine disputes of material fact that preclude summary judgment. (Doc. # 145.) Specifically, because an ambiguity was found in the insurance policy, the ambiguity must be resolved by giving effect to the parties' intent, which is a question of fact. *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 17-cv-01456-CMA-KLM, 2021 WL 4307075, at *2 (D. Colo. Sept. 21, 2021) (quoting *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 381 (Colo. 2000); *Moland v. Indus. Claim Appeals Off. of State*, 111 P.3d 507, 510 (Colo. App. 2004)). Accordingly, in this particular case, it is a question of fact for the jury to decide how the parties intended to calculate ACV and the meaning of ACV within the Policy.

Plaintiff filed his Motion on February 11, 2022.[2] Plaintiff seeks to exclude or limit opinion testimony by Berkshire's expert, Jon F. Sands ("Mr. Sands"). (Doc. # 161.) Notably, Plaintiff challenges Mr. Sands's rebuttal report. (Doc. # 161-1.) Based on the rebuttal report, it appears that Mr. Sands authored another report in this matter, dated July 26, 2018. (*See* Doc. # 161-1 at 2.) Further, it appears that Plaintiff has his own expert who authored an expert report, dated April 20, 2021. (*Id.*) Given that Mr. Sands's report is offered in rebuttal to Plaintiff's expert's opinion, Plaintiff's expert has apparently offered opinions based on the same topics Plaintiff challenges in the Motion. (*Id.*) However, these reports are not currently before the Court.

---

[2] The Court notes that the Motion was filed out of time. However, in the interest of judicial economy, and because the Court must act as a gatekeeper by reviewing proffered expert opinions, the Court reaches the merits of the Motion.

## II.    LEGAL STANDARD

The trial court acts as a "gatekeeper" by reviewing a proffered expert opinion for relevance pursuant to Federal Rule of Evidence 401, and reliability pursuant to Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, F. Supp. 2d 1217, 1220–21 (D. Colo. 2008); Fed. R. Evid. 702 advisory comm. notes. The Court has discretion to evaluate whether an expert is helpful, qualified, and reliable under Rule 702. *See Goebel*, 214 F.3d at 1087; *United States v. Velarde*, 214 F.3d 1204, 1208–09 (10th Cir. 2000).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

    (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b)    the testimony is based on sufficient facts or data;
    (c)    the testimony is the product of reliable principles and methods; and
    (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In deciding whether expert testimony is admissible, the Court must make multiple determinations. First, it must first determine whether the expert is qualified "by

knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 1241. Second, if the expert is sufficiently qualified, the Court must determine whether the proposed testimony is sufficiently "relevant to the task at hand," such that it "logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884, 884 n.2 (10th Cir. 2005). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

Third, the Court examines whether the expert's opinion "has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Norris*, 397 F.3d at 884, 884 n.2 (quoting *Daubert*, 509 U.S. at 592). In determining reliability, a district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* (quoting *Daubert*, 509 U.S. at 592–93). In making this determination, a court may consider: "(1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has general acceptance." *Norris*, 397 F.3d at 884 (citing *Daubert*, 509 U.S. at 593–94).

The Supreme Court has made clear that this list is neither definitive nor exhaustive. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). In short, "[p]roposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.

5

The requirement that testimony must be reliable does not mean that the party offering such testimony must prove "that the expert is indisputably correct." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). Rather, the party need only prove that "the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.* Guided by these principles, this Court has "broad discretion" to evaluate whether an expert is helpful, qualified, and reliable under the "flexible" standard of Fed. R. Evid. 702. *Velarde*, 214 F.3d at 1208–09; *Daubert*, 509 U.S. at 594.

### III. ANALYSIS

Plaintiff does not raise arguments related to Mr. Sands's qualifications. Plaintiff also does not argue that the entire opinion should be excluded. Rather, Plaintiff argues that certain opinions should be excluded because they are not helpful to the jury, are not reliable, or are not relevant. Further, Plaintiff argues that the Tenth Circuit's opinion is the "law of the case," and therefore Mr. Sands's opinions should not be allowed. (Doc. # 161 at 3.) Plaintiff also argues that Mr. Sands's opinions are not helpful to the jury, are not reliable, and are not relevant. This matter is now ripe for review. (Doc. ## 162, 171.)

The Court addresses each challenged opinion in turn.

### A.   OPINIONS RELATED TO CONTRACT INTERPRETATION

First, Plaintiff challenges opinions offered by Mr. Sands that allegedly attempt to interpret the contract. (*Id.* at 3–5.) Specifically, Plaintiff challenges the following statements contained in Mr. Sands's report:

- "The plain language in the insurance policy provides Berkshire with the option to pay either the value of the property or the cost of replacement." (Doc. # 161-1 at 3.)
- "Suffice to say that the policy says what it says and the insurer is given the option to select the stated methods of valuation (as found by the district court)."[3] (Doc. # 161-1 at 10.)

Plaintiff argues that these statements contradict the Tenth Circuit's opinion finding the policy language ambiguous. The Court agrees in part.

"[A]n expert may not simply tell the jury what result it should reach . . . ." *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005). Further, "expert testimony is not admissible to inform the trier of fact as to the law that it will be instructed to apply to the facts in deciding the case." 4 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 702.03[3] (supp. 2019) (citing, *e.g.*, *Hygh v. Jacobs*, 961 F.2d 359, 361–62 (2d Cir. 1992) (expert witnesses may not compete with the court in instructing the jury)). Similarly, contract interpretation is not a proper subject for expert testimony. *Id.* (citing, *e.g.*, *Breezy Point Coop. v. Cigna Prop. & Cas. Co.*, 868 F. Supp. 33, 35–36 (E.D.N.Y. 1994) (expert witness's proposed testimony that failure to give timely notice of loss violated terms of insurance policy was inadmissible because it would improperly interpret terms of a contract)).

---

[3] In his reply, Plaintiff attempted to challenge a third statement contained in Mr. Sands's report. (Doc. # 171 at 1–2.) However, because Defendant has not had an opportunity to address this statement, the Court does not consider a new argument raised for the first time in the reply.

7

As an initial matter, the Court notes that Plaintiff has misquoted Mr. Sands's report. The first challenged statement is not an opinion offered by Mr. Sands. Rather, Mr. Sands was citing to the Court's Order in this case. (*See* Doc. # 161-1 at 2–3.) Mr. Sands also discussed the Tenth Circuit's decision in his report. Accordingly, the Court finds no basis to strike this portion of Mr. Sands's report because he is not offering an opinion. Rather, he was stating factually what occurred in this case.

With respect to Mr. Sands's proffered opinion about what the policy says, the Court agrees that Mr. Sands may not offer an opinion that amounts to contract interpretation. *See Breezy Point Coop.*, 868 F. Supp. at 35–36. However, based on the statement challenged by Plaintiff, it appears that Mr. Sands is not attempting to interpret the contract. Rather, Mr. Sands appears to be responding to Plaintiff's expert's opinion on the topic of whether Berkshire's conduct breached industry standard. (Doc. # 161-1 at 10.) Mr. Sands may offer factual statements about language that is included in the Policy for the purpose of offering his opinions about claims handling. The Court agrees with Defendant (Doc. # 162 at 2–3) that Mr. Sands has offered his statement about the policy in the context of his opinion about claims handling and industry standard. A factual summary of the terms of the policy is entirely consistent with the Tenth Circuit's opinion, which also sets forth the Policy in its opinion. *See Bethel*, 822 F. App'x at 837. Although Mr. Sands may not interpret the contract, *see Breezy Point Coop*, 868 F. Supp. at 35–36, Mr. Sands may discuss the language contained in the Policy, including his opinion that the Policy could be interpreted more than one way.

8

Further, the Court notes that, in this case based on the language of the Policy, it is an ultimate question of fact for the jury to decide how the parties intended to calculate ACV. Accordingly, Mr. Sands is prohibited from instructing the jury about how the value of the Property should be calculated.

**B.   OPINIONS RELATED TO INSURANCE INDUSTRY STANDARDS**

Plaintiff also objects to any opinions offered by Mr. Sands that discuss whether Berkshire's conduct was reasonable or within industry standards. (*Id.* at 6–7.) Specifically, Plaintiff challenges Mr. Sands's opinion that Berkshire did not "breach industry standard." Plaintiff also challenges Mr. Sands's reliance on Colorado law to outline industry standard. Plaintiff argues that these statements improperly invade the province of the jury and the Court and are, therefore, not permitted. (Doc. # 161 at 6–7.)

Federal Rule of Evidence 704 allows an expert witness to testify about an ultimate question of fact. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). To be admissible, however, an expert's testimony must be helpful to the trier of fact. Fed. R. Evid. 702. To ensure testimony is helpful, "[a]n expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion." *Richter*, 796 F.3d at 1195 (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008)).

"The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *Richter*, 796 F.3d at 1195 (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). Permissible testimony provides the jury with the "tools to evaluate an expert's ultimate conclusion

and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *Id*. (citing *Dazey*, 403 F.3d at 1171–72 ("Even if [an expert's] testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment.")).

In this case, the Court first finds that Mr. Sands's proffered testimony concerning industry standards is highly relevant to the main issue in the case—whether Berkshire's claim evaluation was reasonable. To the extent he included background on industry standards in his expert report, that background merely served to lay the foundation for his opinions. Accordingly, the Court finds that Mr. Sands's testimony would be helpful to the jury.

Further, referencing industry standards—some of which are derived from case law—does not constitute improper legal-conclusion testimony. An expert witness "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988); *see also TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1184–86 (D. Colo. 2018) (an expert may refer to statutes and regulations that may illustrate what constitutes "reasonable conduct" in the insurance industry without usurping court's role to instruct jury). This is precisely what Mr. Sands's proposed opinion does. He outlines relevant case law in the insurance industry and offers an opinion about the insurance industry standard. (Doc. # 161.) Accordingly, the Court denies Plaintiff's motion to the extent it seeks to exclude Mr. Sands's opinion on Berkshire's conduct and the industry standard.

10

*See Tong Thao Lo v. Allstate Ins. Co.*, 18-cv-02445-DDD-NYW, 2020 WL 3332654, at *3 (D. Colo. Feb. 20, 2020) (denying request to exclude testimony by Mr. Sands on same grounds); *Etherton v. Owners Ins. Co.*, No. 10-CV-00892-PAB-KLM, 2013 WL 68702, at *5 (D. Colo. Jan. 7, 2013) (permitting testimony of insurance industry bad faith expert where the expert applied the legal or industry standard to the facts in determining if a defendant's conduct was violative of standards in industry).

However, Mr. Sands may not "offer ultimate legal opinions, and he may not simply tell the jury what result to reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *See, e.g., O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 929 (D. Colo. 2017) (citation omitted). Such ultimate conclusions would not be helpful to the jury and would improperly intrude on the fact-finding function. *Id.*

In short, Mr. Sands may testify as to insurance industry standards and what Berkshire did in this case. However, Mr. Sands may not opine as to whether Berkshire's conduct was reasonable as a matter of law because that is a decision that falls within the province of the jury. *See Stoker v. State Farm Mut. Auto. Ins. Co.*, 19-cv-03569-NYW, 2021 WL 4201583, at *6 (D. Colo. May 6, 2021) (noting that an insurance industry expert "may testify as to insurance industry standards, and may testify [about the insurer's] compliance with those standards, [but] he may not direct the jury's understanding of the applicable legal rights and obligations of the parties").

C. **OPINION ABOUT INDUSTRY STANDARD RELATED TO ACV**

Finally, Plaintiff objects to Mr. Sands's opinion that "there is no industry standard

[in Colorado] establishing one method for calculation of ACV." (Doc. # 161 at 7–8.) To the extent Plaintiff argues that Mr. Sands's opinion is factually incorrect, the Court concludes that such arguments go to the weight of Mr. Sands's testimony rather than admissibility. *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 10-cv-02516-WJM-KLM, 2014 WL 4651643, at *5 (D. Colo. Sept. 18, 2014).

Further, Plaintiff's entire argument appears to be based on a disagreement as to the state of the law, not industry standards. Plaintiff relies upon several citations to allegedly competing legal authority to argue that Mr. Sands's opinion should be excluded.[4] (Doc. # 161 at 7–8.) As an initial matter, Plaintiff's citations do not support his position. Plaintiff cites: (1) a statute that defines recoverable depreciation, not ACV (Doc. # 161-3); (2) a summary and a bulletin from the Colorado Division of Insurance, both of which are not binding and do not support Plaintiff's argument (Doc. ## 161-4, 161-5); and (3) an email Plaintiff's counsel received in 2019 from an individual at the Colorado Division of Insurance, which, once again, does not support Plaintiff's position (Doc. # 161-6). None of these documents are authoritative evidence that establish as a matter of law the existence of an "industry standard" for calculating ACV.

Moreover, Plaintiff's argument represents the parties' competing view of the law, which is not properly before the Court in a Rule 702 motion. *Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1143 (D. Utah 2021) (noting that "when expert opinion is based on the parties' competing views of the law, motions to exclude

---

[4] Plaintiff expanded his argument in his reply, citing to new evidence that Defendant had no opportunity to address. Accordingly, the Court does not consider these new arguments made in the reply.

expert testimony under Rule 702 are not the appropriate medium for resolving these legal disputes; that is what summary judgment and trial are for"). Accordingly, for the foregoing reasons, the Court denies Plaintiff's request to exclude Mr. Sands's opinion that "there is no industry standard [in Colorado] establishing one method for calculation of ACV."

### D. OTHER EXPERT OPINION TESTIMONY RELATING TO SAME TOPICS

As noted above, there are apparently at least two other expert opinions authored in this case, both relating to the same issues addressed in this Motion. Although those opinions are not before the Court, the Court is "obligated to act as 'gatekeeper' of proffered expert testimony for relevance and reliability," even if issues are not raised in motions before the Court. *See Stoker*, 2021 WL 4201583, at *6 n.6.

Accordingly, to the extent the parties intend to offer any expert opinion testimony about the same topics addressed in Plaintiff's Motion and this Order, the Court directs the parties to:

- Confer about whether each party intends to offer additional expert opinion testimony about the same topics addressed in Plaintiff's Motion and this Order. Specifically, the Court directs the parties to confer about the affirmative expert reports referenced in Mr. Sands's rebuttal report, in addition to any other expert opinions about the topics addressed in this Order.

- If the parties intend to offer additional expert opinion testimony about the same topics addressed in this Order, the parties are directed to

13

- meaningfully discuss any objections to the proffered expert opinion testimony.

- After conferral, the parties are directed to create a joint table addressing: (1) the allegedly objectionable testimony; and (2) each party's response to the allegedly objectionable testimony. This joint table shall be attached to a joint status report. Each proffered expert opinion shall also be attached to the joint status report. The status report is due no later than NOON on Friday, April 1, 2022.

- Simultaneous briefing, not to exceed 8 pages, addressing the proffered expert opinion testimony and the objections raised in conferral, may be filed. The Court will not consider new arguments not discussed in the joint status report, raised for the first time in the briefing. Such briefing is due no later than NOON on Friday, April 1, 2022. No responses or replies may be filed. No extensions will be granted.

- If the parties do not intend to offer additional expert opinion testimony about the issues raised in Plaintiff's Motion, the parties shall file a joint status report informing the Court of the same.

The Court notes that any expert testimony offered in this case must comport with the limits set forth in this Order. *See Hansen Constr. Inc. v. Everest Nat'l Ins. Co.*, 16-cv-02902-CMA-GPG, 2019 WL 2602510, at *5 (D. Colo. June 25, 2019) (applying the

"good for the goose, good for the gander rule" in precluding expert testimony inconsistent with the Court's opinion).

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Plaintiff's Motion to Exclude or Limit Expert Testimony by Jon F. Sands, Esq. Pursuant to Federal Rule of Evidence 702 (Doc. # 161) is GRANTED in part and DENIED in part for the reasons set forth in this Order.

- The parties are DIRECTED to file a joint status report and/or briefing related thereto by NOON on April 1, 2022, as directed in this Order.

DATED: March 28, 2022                    BY THE COURT:

*Christine M. Arguello*
CHRISTINE M. ARGUELLO
United States District Judge